**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Gary L. Wagoner,

          Plaintiff,

v.

FirstFleet Incorporated,

          Defendant.

No. CV-25-03701-PHX-MTL

**ORDER**

The matter before the Court is Defendant FirstFleet Incorporated's ("FirstFleet") Motion for Attorneys' Fees and Costs. (Doc. 35.) For the reasons set forth below, the Court grants FirstFleet's motion and sanctions *pro se* Plaintiff Gary Wagoner under the Court's inherent authority in the amount of $15,723.04, consisting of $14,560.40 in attorneys' fees and $1,162.64 in costs, to be paid by Wagoner to FirstFleet.

**I**

The Court set out the background of this case and Wagoner's previous litigation against FirstFleet in its order dismissing Wagoner's claims. (*See* Doc. 30.) In short, Wagoner has brought five lawsuits against FirstFleet:

> The first lawsuit was adjudicated to finality by Senior District Judge James A. Teilborg, resulting in a judgment of dismissal for [FirstFleet]. *See* Order of Dismissal and Judgment of Dismissal, *Wagoner v. First Fleet Inc.*, No. CV-22-00990-PHX-JAT (D. Ariz. Jan 19, 2023) (Doc. 18, 19) (hereinafter "*Wagoner I*").

> After voluntarily dismissing two other cases in this District, [Wagoner] filed a fourth lawsuit against FirstFleet concerning the [same]

claim. District Judge Diane J. Humetewa granted FirstFleet's motion to dismiss for res judicata and, as a sanction, invited [FirstFleet] to file a motion for attorneys' fees. Order of Dismissal, *Wagoner v. FirstFleet Inc.*, No. CV-25-02349-DJH (D. Ariz. Nov. 14, 2025) (Doc. 41) (hereinafter "*Wagoner IV*").

(Doc. 30 at 2.)

This is Wagoner's fifth lawsuit. (*Id.*) This time, Wagoner brought suit on behalf of a trust, which the Court found was Wagoner's "attempt[] to circumvent [the identical parties] factor [of res judicata]." (*See id.* at 3.) The Court granted FirstFleet's motion to dismiss, finding that all elements of res judicata were met and barred Wagoner's claims. (*Id.*) The Court further ordered that FirstFleet could move for attorneys' fees and related non-taxable expenses pursuant to LRCiv 54.2. (*Id.*)

FirstFleet filed a motion for attorneys' fees and costs pursuant to 28 U.S.C. § 1927, LRCiv 54.2, and the Court's inherent authority. (Doc. 35.) FirstFleet seeks an award of $25,407.74 in attorneys' fees and costs. (*Id.* at 1.) In his response, Wagoner opposes FirstFleet's request for fees and counter-requests fees under 29 U.S.C. § 1132. (Doc. 36.) Wagoner argues that his actions were not in bad faith because "[t]his suit presents fresh evidence of ongoing breaches . . . proving it's not frivolous." (*Id.* at 2.) He also argues he lacks the ability to pay any fee award. (*Id.* at 2-3.)

The Court set a hearing on FirstFleet's motion. (Doc. 43.) Wagoner filed a motion to continue the hearing, arguing that he was required to work on the day of the hearing to meet his living expenses and attending the hearing would "create significant additional financial hardship." (Doc. 44.) The Court granted Wagoner's motion and ordered him to confer with FirstFleet as to availability to reschedule the hearing. (Doc. 45.) Wagoner conferred with FirstFleet and informed the Court that both parties were available to attend a hearing on the afternoon of June 9, 2026 or at any time on June 10, 2026. (Doc. 47.)

The Court thereafter rescheduled the hearing for June 9, 2026 at 1:30 p.m. (Doc. 48.) FirstFleet attended the hearing but Wagoner did not, despite informing the Court that he would be available and having notice of the hearing. (*See* Doc. 49.)

## II

### A.

The Court first considers whether Wagoner should be sanctioned pursuant to 28 U.S.C. § 1927. Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." An order of § 1927 sanctions "may be imposed upon a *pro se* plaintiff." *Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990). To impose sanctions under § 1927, the court must make a finding of bad faith, *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996), which occurs when a litigant "knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent," *Est. of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citation omitted).

FirstFleet argues the Court should award fees under § 1927 because Wagoner, "[r]ather than accept[ing] the rulings in Wagoner I and Wagoner III, [he] filed yet more complaints, each of which FirstFleet had to remove to this Court and then defend." (Doc. 35 at 5.) It further argues that "[e]ach successive filing has compounded the burden on both FirstFleet and the Court." (*Id.*) In essence, FirstFleet argues that Wagoner should be sanctioned under § 1927 for bringing this action in the first place, but "sanctions under 28 U.S.C. § 1927 do not apply to complaints or initial pleadings." *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011). FirstFleet does not tie its request for sanctions under § 1927 to any other filing by Wagoner in this action, nor does it argue that Wagoner otherwise unreasonably litigated this action after it was filed. Because § 1927 does not permit an award of fees for bringing an action—no matter how frivolous that action may be—the Court may not award fees to FirstFleet under § 1927. *See Keegan Mgmt.*, 78 F.3d at 435 ("Because the section authorizes sanctions only for the multipli[cation of] proceedings, it applies only to unnecessary filings and tactics once a lawsuit has begun. . . . [Section] 1927 cannot be applied to an initial pleading." (first alteration in original)

(quotation marks omitted)).[1]

**B.**

Although the Court may not award fees under § 1927, the Court finds that an award of fees under its inherent authority is warranted in this action. *See Keegan Mgmt.*, 78 F.3d at 435 ("The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power . . . ."). "Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quotation marks omitted). To be sanctioned under the Court's inherent authority "requires a finding of bad faith." *In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004) (citation omitted). "A finding of bad faith is warranted where [a party] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quotation marks omitted). That other rules and statutes may support sanctions does not "displace[] the inherent power to impose sanctions for bad faith conduct." *DeVille*, 361 F.3d at 551. This inherent authority permits the Court to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire*, 581 U.S. at 107 (citation omitted). Such an appropriate sanction may include attorneys' fees. *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021).

But this sanction "must be compensatory rather than punitive in nature," so a "fee award may go no further than to redress the wronged party for losses sustained." *Goodyear Tire*, 581 U.S. at 108 (quotation marks omitted). The Court may therefore "shift only those attorney's fees incurred because of the misconduct at issue," so there must be a "causal

---

[1] FirstFleet briefly mentions the amended complaint (Doc. 35 at 5), but it does not only request fees incurred due to or after Wagoner filed the amended complaint (*see* Doc. 35-1 at 4), which indicates to the Court that FirstFleet does not base its § 1927 request on the proceedings arising after the amended complaint was filed. Because "the conduct in question must be sanctionable under the authority relied on," *Keegan Mgmt.*, 78 F.3d at 435 (citation omitted), and because FirstFleet did not indicate which fees and costs it requested were traceable to the amended complaint specifically, *see Rowland v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 142 F.4th 1169, 1174 (9th Cir. 2025), the Court declines to award fees under § 1927 based on the proceedings arising out of the amended complaint.

- 4 -

link[] between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* Accordingly, if a defendant "would have incurred an expense in any event, he has suffered no incremental harm from the frivolous claim, and so the court lacks a basis for shifting the expense." *Id.* at 109 (citation modified). That said, "[i]n exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at 110. One such example is if "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award." *Id.*

Here, the Court finds that this is an exceptional case warranting fees from the start of the lawsuit because FirstFleet's fees "would not have been incurred except for the misconduct" of Wagoner filing this lawsuit. *Id.* at 111; *see also Lu v. United States*, 921 F.3d 850, 861 (9th Cir. 2019) ("This exceptional case rule is consistent with . . . prior cases holding that where the entirety of the action is attributable to bad faith abuse of the judicial process, a district court can award fees for the entire course of litigation, so long as all fees are in some way traceable to bad faith activity." (quotation marks omitted)). The Court finds that Wagoner brought this lawsuit in bad faith because he recklessly (if not knowingly) brought these claims that had already been dismissed with prejudice and therefore were subject to claim preclusion. In *Wagoner IV*, FirstFleet argued in its motion to dismiss—which was filed before Wagoner brought this suit—that his claims were barred by claim preclusion. *See* Doc. 5, *Wagoner IV*, at 6-8 (D. Ariz. July 11, 2025). Even if Wagoner reasonably thought that his claims in that case were meritorious, a reasonable litigant would have taken notice of the concept of claim preclusion and conducted a careful analysis of any future claims brought to redress the same or similar conduct to determine whether claim preclusion would apply to bar those claims. As the Court determined, Wagoner's claims in this action were precluded (Doc. 30 at 3), and the Court concludes that in light of the circumstances and his previous case history, such claims were frivolous and in the very least recklessly brought. *See Zone Sports Ctr. Inc. v. Red Head, Inc.*, No. 11-cv-00634-JST, 2013 WL 2252016, at *5 (N.D. Cal. May 22, 2013) ("Courts in this

circuit routinely hold that a claim that is barred by res judicata is frivolous.").

But the Court notes that the record suggests that Wagoner brought these claims knowing they were precluded; as the Court noted, Wagoner "attempted to circumvent" claim preclusion by "asserting claims on behalf of a trust as well as himself." (Doc. 30 at 3; *see also* Doc. 18 at 2 ("Naming the Trust as the real party in interest seems to have been intentional to avoid the claim preclusion arguments made by FirstFleet in its motion to dismiss.").) Once the Court required Wagoner to file an amended complaint to reframe the complaint to disclose the real party in interest and substitute the trustee for the trust if the claims belonged to the trust as alleged (*see* Doc. 18 at 2-3), Wagoner dropped the trust as a party and alleged that the suit was "an individual action brought by [himself]" (*see* Doc. 19 at 1-2). This history indicates to the Court that Wagoner knew his claims were precluded and frivolously named a trust as plaintiff to get around claim preclusion, even though he ultimately conceded that the claims belonged to him, not a trust. (*Compare* Doc. 1-1 at 7 (naming as the plaintiff "STARBOARD ATTITUDE TRUST, by and through Gary L. Wagoner"), *with* Doc. 16 at 1 (stating that the claims were brought by Wagoner and he did not "intend to represent or litigate on behalf of" the trust); *id.* at 2 (stating that Wagoner is "the real party in interest"); *id.* at 3 ("confirm[ing]" that Wagoner was appearing "as an individual asserting his own rights").)[2]

Wagoner argues that his suit was "good-faith, supported by over 245 exhibits of systemic misconduct" (Doc. 36 at 1), but even if Wagoner were correct that his claims were meritorious, his conduct leading up to this lawsuit indicates to the Court that the claims were brought to harass FirstFleet and would still be sanctionable. *Primus Auto. Fin. Servs.*, 115 F.3d at 649. Before Wagoner brought this lawsuit, he made the following statements in a letter to FirstFleet: (1) "I've been at this for four years," "I will not go away," "[a]nd I will not let FirstFleet off the hook"; (2) "You're fighting four claims now," but "I have **twenty-seven more** . . . each built on the same defects," and "[y]ou will not win them all";

[2] Wagoner argues that his claims were not frivolous because they "present[ed] fresh evidence of ongoing breaches" (Doc. 36 at 2), but as FirstFleet notes (Doc. 37 at 3), Wagoner's cited exhibits were dated before he brought his first complaint. (*Compare* Docs. 36-2, 36-3), *with* Doc. 1-3, *Wagoner I*, at 5 (D. Ariz. June 7, 2022).

(3) "[a]ny case dismissed without prejudice will be refiled immediately" and "[y]ou will see me again and again until this is resolved"; and (4) "I am not going away," "I have more claims, more documentation, and more patience than your attorneys planned for," and if FirstFleet would not settle, "discovery will not just consume your vendors—it will consume FirstFleet itself." (Doc. 20-1 at 2-4.) The logical inference from such statements is that Wagoner intended to bring whatever claim he could, in whatever format or framing, to bury FirstFleet in lawsuits or bring it to financial ruin if it would not settle. The Court also agrees with Judge Humetewa that Wagoner's filing of multiple actions "must be intended to harass" FirstFleet because, "[i]f [his] sole aim was to recover the funds he believes are owed to him, then there would be no need to file two more actions before [one] matter's resolution." *See* Dismissal Order, *Wagoner IV*, at 13. Accordingly, even if Wagoner's claims were meritorious, the Court would still find that Wagoner brought his claims to harass FirstFleet and that the circumstances made this an exceptional case warranting a blanket award of fees. *See Lu*, 921 F.3d at 863 (noting that a court may consider prelitigation conduct in deciding whether an action is an "exceptional case").

The Court is mindful that its inherent powers "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). That Wagoner has continued to bring these claims in spite of previous adverse judgments to harass FirstFleet, however, is an abuse of the legal system and has imposed significant costs on both the Court and FirstFleet. FirstFleet was forced to incur fees and spend time to defend against his baseless lawsuit, including to file a successful motion to dismiss. As for the Court, it was required to spend precious time and resources addressing claims that should never have been brought, taking its time and attention away from cases with meritorious claims. *See Maxwell v. MOAB Inv. Grp., LLC*, No. 14-cv-03095-WHO, 2014 WL 4757429, at *6 (N.D. Cal. Sep. 24, 2014) (stating that plaintiffs "placed [an] unnecessary burden on the courts by forcing them to address claims that were previously and conclusively decided in other tribunals"). In light of these circumstances, and for the reasons explained, the Court finds that this is an exceptional case in which all of FirstFleet's requested attorneys' fees

and costs were incurred because of Wagoner's bad faith in bringing this lawsuit.

Finally, the Court finds that Wagoner has been provided with sufficient process regarding the imposition of sanctions under the Court's inherent authority. *See In re Lehtinen*, 564 F.3d 1052, 1060 (9th Cir. 2009) ("[W]hen using the inherent sanction power, due process is accorded as long as the sanctionee is provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable, and [was] furthermore aware that [he] stood accused of having acted in bad faith." (second and third alterations in original) (quotation marks omitted)), *abrogated on other grounds as stated in In re Gugliuzza*, 852 F.3d 884, 898 (9th Cir. 2017). FirstFleet outlined in its motion what it believed constituted sanctionable conduct (Doc. 35); Wagoner was given an opportunity to provide a written response, and he did so (Doc. 36); and the Court held a hearing at which Wagoner was given an opportunity to be further heard (although he did not avail himself of that opportunity).[3]

## III

Having determined that an award of attorneys' fees is warranted under the Court's inherent authority, the Court must determine an appropriate award. A party requesting attorney's fees pursuant to a sanction order must ensure their request is reasonable. To determine the reasonableness of a requested fee award, the Court uses the lodestar approach. *Coe v. Hirsch*, No. CV-21-00478-PHX-SMM (MTM), 2022 WL 508841, at *1 (D. Ariz. Jan. 21, 2022); *see also Pelayo v. Platinum Limousine Servs., Inc.*, 804 F. App'x 522, 523-24 (9th Cir. 2020) (per curiam). "Under this approach, a 'presumptively reasonable' fee award 'is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Coe*, 2022 WL 508841, at *1 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008)). In his response to FirstFleet's motion, Wagoner did not object to the hourly rates, billing entries, or costs set out in

---

[3] The Court rejects as meritless Wagoner's request for fees under 29 U.S.C. § 1132. That statute provides that "the court in its discretion may allow a reasonable attorney's fee and costs . . . to either party." 29 U.S.C. § 1132(g)(1). A claimant must show "some degree of success on the merits" before attorney's fees may be awarded. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (citation omitted). Wagoner has not obtained any degree of success on the merits; his claims have been dismissed.

- 8 -

FirstFleet's motion. (*See* Doc. 36.) The Court nevertheless conducts an independent review of FirstFleet's requested fees and costs in exercising its discretion to impose a sanction.

**A**

The reasonableness of an hourly rate depends on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (citation omitted). "The 'relevant community' for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds." *J&J Sports Prods., Inc. v. Marini*, No. 1:16-cv-0477-AWI-JLT, 2018 WL 2155710, at *1 (E.D. Cal. May 10, 2018); *see also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). Here, the claimed hourly rate must be compared against attorneys practicing in the Phoenix Division for the District of Arizona. Further, the Court must use the prevailing rates in the market that were in effect within two years of the services being performed. *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003).

FirstFleet's counsel seeks a $769.50 hourly rate for a shareholder, a $508.50 hourly rate for a senior associate, and a $486.00 hourly rate for an associate. (Doc. 35-1 at 2-3.) The Court finds that these rates are excessive for the Phoenix legal market for this kind of work, especially considering that the dispositive issue in this case was whether Wagoner's claims were barred by claim preclusion, which is not a complex or novel issue. The *2025 Economics of Law Practice in Arizona* report published by the State Bar provides that the average hourly rate is $423.00 and the median hourly rate is $397.00 for an attorney with the same number of years in practice as FirstFleet's shareholder counsel. This report also provides that the average hourly rate is $385.00 and the median hourly rate is $393.00 for an attorney with the same number of years in practice as FirstFleet's senior associate and associate counsel. The Court nevertheless acknowledges that, although it ruled on claim preclusion grounds, FirstFleet also raised the more complicated issues of the statute of limitations under ERISA and ERISA preemption. (*See* Doc. 6 at 9-11; Doc. 20 at 9-11.) And although not as current as the 2025 report, the Court notes that courts in this District

have found hourly rates of $450.00 to $550.00 reasonable in ERISA cases for "attorneys with seventeen to twenty years of experience." *Koch v. Desert States Emps. & UFCW Unions Pension Plan*, No. CV-20-02187-PHX-DJH, 2021 WL 6063534, at *6 (D. Ariz. Dec. 22, 2021).

Considering the circumstances of this case, the Court finds that a reasonable hourly rate is $450.00 for the shareholder counsel, $390.00 for the senior associate counsel, and $385.00 for the associate counsel.[4]

**B**

The lodestar figure requires the determination of a reasonable number of compensable hours. *See Gonzalez*, 729 F.3d at 1202. The Court must thus review the billing records submitted by the requesting party and "exclude those hours for which it would be unreasonable to compensate." *Id.* at 1203. The Court should also exclude any time that is "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted).

There are several entries that the Court determines would be unreasonable for FirstFleet to be compensated, including the time spent to prepare a notice of errata (Doc. 35-1 at 9) and the time spent to review the Court's docket (*id.* at 10); the Court will accordingly reduce the requested fee award by 1.2 hours. *See Moore v. Chase, Inc.*, 2016 WL 3648949, at *5 (E.D. Cal. July 7, 2016). The Court also declines to award fees for time spent in which the Court cannot determine what was done and whether the task was reasonable, including a drafted "notice" in support of a request for sanctions before the action was removed to this Court (Doc. 35-1 at 9); the Court will accordingly reduce the requested fee award by an additional 1.2 hours. The Court will also reduce by 20% entries that involved more than one task but did not indicate how long each task took, so the Court was not able to determine whether the time spent on each task was reasonable. (*See id.* at 10 (October 28, 2025 entry for drafting an opposition and "Wagoner opposition to

---

[4] Although the associate counsel has been practicing law longer than the senior associate counsel, the Court finds that these hourly rates are reasonable because the senior associate counsel has been practicing in the relevant practice area for longer than the associate counsel. (*See* Doc. 35-1 at 3.)

motion"); *id.* at 20 (December 9, 2025 entry for finalizing motion to dismiss and motion for extension of time).) Finally, the Court finds that the time spent on preparing and filing the motion to dismiss the amended complaint is excessive considering that FirstFleet made mostly the same arguments as it made in its first motion to dismiss. (*Compare* Doc. 20, *with* Doc. 6.) The Court will therefore reduce the time spent on preparing the motion to dismiss the amended complaint by 40%. (*See* Doc. 35-1 at 20 (billing entries on December 2, 2025 and December 3, 2025).)[5] The Court has reviewed the remainder of the billing entries and finds them reasonable.

Multiplying the reasonable hourly rate determined by the Court by the reasonable number of compensable hours, the Court calculates the lodestar to be the following:

| Attorney | Hourly Rate | Number of Compensable Hours | Total Fees Awarded |
|---|---|---|---|
| SBF | $450.00 | 13.86 | $6,237.00 |
| SW | $390.00 | 19.96 | $7,784.40 |
| AMB | $385.00 | 1.4 | $539.00 |
| | | | $14,560.40 |

**C**

FirstFleet also requests $1,162.64 in costs, consisting of $656.64 in computer research, $405.00 for the filing fee to remove to this Court, $50.50 for "Research Service on Dreamy Draw Justice Court," and $50.50 for a filing fee in Dreamy Draw Justice Court. (*Id.* at 10, 16.) The Court finds these costs reasonable and will award FirstFleet its requested $1,162.64 in costs.

The Court will therefore award FirstFleet its fees in the amount of $14,560.40 and costs in the amount of $1,162.64, which the Court finds is reasonable, will compensate FirstFleet for Wagoner's bad faith conduct in bringing this action, and will deter Wagoner

---

[5] Because the December 9, 2025 billing entry is already being reduced by 20%, the Court finds it is not necessary to reduce it further.

- 11 -

from repeating this conduct in the future without being punitive.[6]

**IV**

Accordingly,

**IT IS ORDERED** that FirstFleet's Motion for Attorneys' Fees (Doc. 35) is **granted**.

**IT IS FURTHER ORDERED** that Wagoner is sanctioned under the Court's inherent authority in the amount of $15,723.04, consisting of $14,560.40 in attorneys' fees and $1,162.64 in costs.

**IT IS FINALLY ORDERED** that Wagoner must make payment to FirstFleet no later than **July 27, 2026**. Wagoner must file a notice of compliance within one week of payment.

Dated this 10th day of June, 2026.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge

---

[6] Although "the ability of a party to pay is one factor a court should consider when imposing sanctions," *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993), the Court finds that the circumstances in this case do not warrant a further reduction of sanctions based on Wagoner's alleged inability to pay. As explained, this action was brought in bad faith, and Wagoner was on notice from the outset that FirstFleet would seek its attorneys' fees and costs if it prevailed (*see* Doc. 6 at 12-14 (arguing for sanctions under the Court's inherent authority)). "It would be unjust to allow [Wagoner] to further drive up the costs of this litigation . . . despite [FirstFleet's] tip-off that [Wagoner could] be held accountable for them, and then to allow him to dodge those attorneys' fees by claiming financial hardship." *Edwards v. Vemma Nutrition*, No. CV-17-02133-PHX-DWL, 2019 WL 5684192, at *16 (D. Ariz. Nov. 1, 2019). Additionally, the Court has already reduced FirstFleet's requested fees in its discretion, even though Wagoner did not contest counsel's hourly rates or billing entries and did not attend the hearing on the motion.

- 12 -